IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TERRI L. BRUMLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-CV-097-O-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| | § | |
| Defendant | § | Assigned to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER OF REMAND**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Terri L. Brumley seeks judicial review of the Commissioner of Social Security's decision, which denied her applications for disability benefits under Title XVI of the Social Security Act. All parties consented to the jurisdiction of the magistrate judge, and the case was reassigned to this Court in accordance with 28 U.S.C. § 636(c). (Doc. 18).

After considering the pleadings, the briefs, and the administrative record, this Court reverses the Commissioner's decision and remands the case for further consideration consistent with this opinion.

**Statement of the Case**

Following a hearing on May 16, 2012, an Administrative Law Judge (ALJ) determined on June 29, 2012, that Brumley was not disabled. Specifically, the ALJ found that Brumley's impairments did not meet or equal any of the impairments listed in Appendix 1 of the governing regulations, that she retained the residual functional capacity (RFC) to perform less than a full

range of light work,[1] and that although she was not capable of performing her past relevant work, she was capable of performing other jobs existing in significant numbers in the national economy. The Appeals Council denied review on June 11, 2013. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

### Factual Background

Brumley filed an application for supplemental security income on October 5, 2010. (Tr. 12, 134-41); (Pl.'s Br. 1). Brumley claims she became disabled on July 3, 2010, due to a torn right rotator cuff, adjustment disorder with depressive mood, and migraine headaches. (Tr. 70-71, 76, 260-61, 293, 331-32). Brumley was also diagnosed with hypertension (possibly secondary to the rotator cuff injury) in early 2011. (Tr. 275, 276, 349-51). Previously, Brumley worked as a private caretaker, a waitress, bartender, beauty consultant, horse trainer, and meat wrapper. (Tr. 38-54, 167). Brumley has a high school education and attended cosmetology school for one year. (Tr. 36); (Pl.'s Br. 2).

On July 3, 2010, Brumley dislocated her right shoulder while diving off a boat. (Tr. 38, 231-45). The dislocation was successfully reduced the same day at Graham Regional Medical Center. (Tr. 230-45). Since the injury, Brumley has been in persistent pain and unable to make proper use of the arm. (Tr. 38-54, 246, 259-61, 270-90, 316, 317-400).

On September 27, 2010, Brumley underwent a Magnetic Resonance Imaging (MRI), which revealed a "chronic rotator cuff tear with retraction of the tendon to the level of the

---

[1] The ALJ does not explicitly place Brumley's RFC in an exertional category listed in S.S.R. 83-10. For the sake of brevity and clarity, and because a more thorough description of Brumley's RFC will follow, the Court recognizes the ALJ's description of Brumley's RFC to be equivalent to "less than a full range of light work," as defined by S.S.R. 83-10.

acromioclavicular joint." (Tr. 281, 331). Brumley was then scheduled with Dr. Steven Wilson, M.D., who performed a surgical repair of her rotator cuff on April 28, 2011. (Tr. 334-35). Dr. Wilson noted that Brumley suffered a "massive tear involving the rotator cuff tendon extending from the supraspinatus to the teres minor." (Tr. 326, 335). Brumley also suffered a "small tear involving the anterior labrum . . . [and a] [c]hondral fracture involving the glanoid surface with loose chondral flaps." (Tr. 326, 334-35). Dr. Wilson prescribed post-surgical physiotherapy to rehabilitate Brumley's arm. (Tr. 336).

In July 2011, Brumley returned to Dr. Wilson with complaints of increased pain in her shoulder. (Tr. 337). Brumley reported a painful grinding sensation in her shoulder that was induced and exacerbated by therapy exercises, with a marked increase in painful sensation when she elevated her arm to shoulder height. (Tr. 337, 392, 394). Brumley denied any traumatic injury to the shoulder. (Tr. 337). When Brumley returned with continued complaints of discomfort and pain in August 2011, Dr. Wilson was concerned she may have ruptured the initial repair because of the severity of the original injury and the degree of osteoporosis in the bone. (Tr. 338). Dr. Wilson ordered an MRI of Brumley's shoulder, which revealed a "complete tear and retraction of the supraspinatus and infraspinatus components of the rotator cuff. . .[,] tendinopathy with partial tearing of the superior bundle of the subscapularis rotator cuff. . . [and] glenohumeral degenerative change with some cephalad migration of the humeral head in relation to the glenoid." (Tr. 338, 340). As a result of these findings, Dr. Wilson suggested a repeat repair of the rotator cuff, this time with a more invasive procedure to ensure a more stable repair. (Tr. 342). Dr. Wilson performed the second repair in October 2011. (Tr. 343-45). Rehabilitation attempts after both surgeries were unsuccessful. (Tr. 359-400). In March 2012, Dr. Wilson opined that although Brumley was unable to make proper use of her right arm, the disability was

not permanent but was expected to last more than six months. (Tr. 316).

The physical RFC assessment, dated December 6, 2010, states that Brumley could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for a total of around 6 hours in an 8 hour workday, sit for a total of 6 hours in an 8 hour workday, and push or pull an unlimited amount (other than the restrictions for lifting or carrying). (Tr. 263). Brumley suffered no postural limitations, no visual limitations, no communicative limitations, and no environmental limitations. (Tr. 264-66). However, the assessment limits Brumley to only occasional overhead reaching with her right arm. (Tr. 265).

In May 2011, Dr. Mark Boulous, M.D., assessed Brumley's mental RFC. (Tr. 310-13). Dr. Boulous found that Brumley's ability to understand and remember detailed instructions, to carry out detailed instructions, and maintain attention and concentration for extended periods were only moderately limited. (Tr. 310). None of Brumley's other mental faculties were found to be deficient. (Tr. 310-13). The evaluation found that her "alleged limitations due to mental symptoms [were] not fully supported" by the evidence on record. (Tr. 313). Dr. Boulous opined that Brumley had an adjustment disorder with depressive mood. (Tr. 299). Specifically, he believed that Brumley suffered mild restrictions on activities of daily living, and in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 306). In addition to these evaluations, Brumley also visited Dr. Timothy Nyberg, Ph.D, who evaluated her mental status. (Tr. 292-95). Dr. Nyberg made the same diagnosis as Dr. Boulous, stating that Brumley suffered from chronic adjustment disorder with depressive mood. (Tr. 295). However, Dr. Nyberg opined that her prognosis was good, but her symptoms could worsen if she were to permanently lose function in her arm. (Tr. 295). At the time of the evaluation, Brumley's "mood symptoms appeared to be relatively mild, and relatively transient." (Tr. 295).

**Standard of Review**

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). Additionally, a claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505, 416.911. "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to Steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite

[the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry of whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). To determine whether the Commissioner's decision is supported by substantial evidence, the Court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the Claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter,* 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452).

## Discussion

The sole issue on appeal is whether the ALJ erred at Step 3 in finding that Brumley did not meet or equal any of the listings. (Pl.'s Br. 1, 15-22).

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined that Brumley was not disabled within the meaning of the Social Security Act. (Tr. 12-23). At Step 1, the ALJ found that Brumley did not engage in substantial gainful activity since October 5, 2010. (Tr. 14). At Step 2, the ALJ found that Brumley had the following severe impairments: "right rotator cuff tear status post two surgeries, hypertension, and adjustment disorder with depressive mood." (Tr. 14). At Step 3, the ALJ found these impairments, alone or in combination, did not meet or equal a listed impairment under the applicable regulations. (Tr. 16). Before proceeding to Steps 4 and 5, the ALJ assessed Brumley's RFC and determined that she retained the ability to

> lift and carry 20 pounds occasionally and 10 pounds frequently. . . . [S]it for about 6 hours during an eight-hour workday. . .[S]tand and walk for about 6 hours during an eight-hour workday. . . . [F]requently reach with her right upper extremity. . . . [But could not] reach overhead with her right upper extremity. . . . [Could] understand, remember, and carry out simple, routine, and some detailed tasks. . . . [And could] respond appropriately to supervisors, co-workers, the general public, and usual work situations (semi-skilled)."

(Tr. 18). At Step 4, the ALJ determined that Brumley was unable to perform any of her past relevant work. (Tr. 21). Finally, at Step 5, the ALJ found that Brumley could perform other work that existed in significant numbers in the national economy, and thus, Brumley was not disabled. (Tr. 22).

## I. The ALJ Improperly Considered Medical Evidence of Brumley's Torn Rotator Cuff at Step 3

Step 3 of the sequential evaluation process requires an ALJ to determine whether a claimant's impairments, either alone or in combination, meet or equal one or more of the "Listings" as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Audler v. Astrue*, 501 F.3d 445, 448 (5th Cir. 2007). Disability is conclusively presumed if a claimant meets or equals one or more of these listings. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); 20 C.F.R. §

416.920(d); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) ("if an adult's impairment 'meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.'"); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Bowen v. City of New York*, 476 U.S. 467, 471 (1986). Only if the claimant fails to meet one or more of the listings does the evaluation proceed to the fourth and fifth steps. *Loza*, 219 F.3d at 390; *see Zebley*, 493 U.S. at 532 (citing *Yuckert*, 482 U.S. at 141) ("'If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step[.]'").

The claimant bears the burden at this Step to prove, with medical evidence, that *all* the criteria of the listings are met. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); *Zebley,* 493 U.S. at 531. "An impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment." S.S.R. 83-19, 1983 WL 31248 at *2 (Jan. 1, 1983). Disability will not be found based on a diagnosis alone. S.S.R 83-19, WL 31248 at *2. In order to "equal" a listed impairment, "the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim must be compared with the set of symptoms, signs, and laboratory findings specified for the listed impairment most like the individual's impairment(s)." S.S.R 83-19, WL 31248 at *2. To judge the "equivalence" of a claimant's impairment(s), the medical findings must be "at least equivalent in severity to the set of medical findings for the listed impairment." S.S.R 83-19, WL 31248 at *2. "In no instance will symptoms alone justify a finding of equivalence." S.S.R 83-19, WL 31248 at *3; *Zebley,* 439 U.S. at 531 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."). Thus, for a claimant to show that she "equals" a listed impairment, she "must present medical

findings equal in severity to *all* the criteria for the one most similar impairment." *Zebley*, 493 U.S. at 531 (emphasis in original); 20 C.F.R. § 416.926(a).

In the instant case, the ALJ considered whether Brumley met or equaled one or more of the listings with any of her severe impairments: (1) torn right rotator cuff, (2) hypertension, and (3) adjustment disorder with depressive mood. (Tr. 14, 16-18). The ALJ determined that Brumley failed to meet or equal any of the listings. (Tr. 16-18).

Brumley takes issue with the fact that the ALJ "only cited to one Listing which he found to be unmet, Sec. 12.04," but failed to cite any other listing. (Pl.'s Br. 15). Specifically, Brumley argues that enough medical evidence was presented to substantiate a finding that she met the criteria in Listing 1.08, and that the ALJ erred in failing properly consider the evidence under this Listing. (Pl.'s Br. 15-22). Brumley asserts this is prejudicial error because the evidence points to a finding of conclusive disability under this Listing. (Pl.'s Br. 20-22).

Listing 1.08, in relevant part, reads:

Soft tissue injury (e.g. burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Section 1.00M states, in relevant part:

Under continuing surgical management, as used in . . . 1.08, refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Although the ALJ did not explicitly cite any other listing, save 12.04 (which deals with mental impairments), he does consider Brumley's torn rotator cuff, presumably under Listing

1.02[2]:

> The claimant sustained a right rotator cuff tear and underwent two surgeries[.] the claimant does not have findings of a loss of gait and station, or a lack of gross and fine manipulation. There is no evidence of joint dysfunction or malformation. The claimant does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, positive straight-leg raising or other findings to meet the requirements for listed musculoskeletal impairments.

(Tr. 17). Brumley contends that this analysis, applied to any listing, is flawed, and that she properly meets all the criteria of Listing 1.08. (Pl.'s Br. 16-20),

The ALJ's analysis of whether Brumley meets or equals any listing, including Listings 1.02 and 1.08, is ambiguous, at best. Apart from failing to cite a specific listing,[3] or, in the alternative, acknowledging that there is no listed impairment (as he does for hypertension), the ALJ seems to confound evidence (or lack thereof) indicative of upper and lower extremity functionality. (*See* Tr. 17). "Such a bare conclusion is beyond meaningful judicial review." *Audler*, 501 F.3d at 448 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

However, Defendant argues that "[a]lthough the ALJ did not state that he was considering Listing 1.02, he set out the requirements contained within the Listing," and found that Brumley failed to meet or equal that listing. (Def.'s Br. 5). In support, Defendant cites to

---

[2] Listing 1.02: "Major dysfunction of a joint(s) (due to any cause): characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motor or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With: . . . (B). Involvement of one major peripheral joint in *each upper extremity*, resulting in inability to perform fine and gross movements effectively as defined in 1.00B2c." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added).

Listing 1.00B2c: "What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[3] *See Audler*, 501 F.3d at 448 ("The ALJ did not identify the listed impairment for which [claimant's] symptoms fail to qualify. . .").

nonbinding authority stating that "it is perfectly reasonable for an ALJ to refer to the most specific applicable listing. . .." (Def.'s Br. 5 (quoting *Cranmer v. Astrue*, 2008 WL 3084706 (D. Mass. Aug. 5, 2008))). While this may be true,[4] it would seem that Listing 1.08 better fits Brumley's rotator cuff impairment. Listing 1.02 requires the impairment involve one or more joints in *each upper extremity*,[5] whereas Listing 1.08 sets no such minimum for disability to be found. Since Brumley's impairment is contained only to her right shoulder, it would seem imprudent to apply a listing that requires both upper extremities to be affected.

The Court agrees with Brumley that the ALJ erred in failing to identify a Listing associated with the torn rotator cuff, and in improperly considered the evidence on record. As such, the ALJ's findings at Step 3 are tainted.

## II. Harmless error

Having concluded that the ALJ erred in his Step 3 determination, the Court must now determine whether this error is harmless. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Procedural errors are considered "harmless" when the ultimate conclusion is not compromised. *Morris*, 864 F.2d at 336 (error is harmless when it does not "render the ALJ's determination unsupported by substantial evidence and does not prejudice [the claimant's] substantive rights."). Thus, to warrant a remand, a claimant must show that a procedural error took place, and that she was prejudiced by such error. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). Procedural errors that are only minor do not call for remand if the error does not deprive the ALJ's determination of substantial evidence. *Morris*, 864 F.2d at 336; *see Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (holding that an ALJ's

---

[4] With due respect, the Court neither accepts nor rejects the opinion of the Massachusetts District Court in *Cranmer*, as cited by Defendant. *See* S.S.R 83-19, WL 31248 at *2 ("the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim must be compared with the set of symptoms, signs, and laboratory findings specified for the listed impairment *most like* the individual's impairment(s).") (emphasis added).
[5] *See supra*, note 2.

failure to follow formalistic rules in articulating credibility findings did not compromise any aspect of fairness or accuracy in the disability determination process when the findings were substantiated by the evidence).

Defendant argues that Brumley "failed to explain how remanding her case for further consideration of Listing 1.08 would result in a different result[,] as the evaluation of that Listing is the same under Listing 1.02." (Def.'s Br. 7). First, evaluation under the two Listings would not be the same, as Defendant posits. Second, Brumley does, in fact, present an extensive analysis of how the evidence substantiates all the elements of Listing 1.08, and pleads that the ALJ's failure to properly consider the presented evidence was prejudicial to her disability determination. (Pl.'s Br. 15-22). Nevertheless, the Court must still objectively consider whether the ALJ's defect was prejudicial, warranting a remand, or minor enough to affirm.

As determined above, the ALJ improperly considered the evidence (or lack thereof) in the record in evaluating whether Brumley met or equaled either Listing 1.02 or 1.08. An extensive review of the record suggests that as is, the ALJ's Step 3 determination lacks substantial evidence. Assuming, *arguendo*, that Listing 1.08 was the proper listing to be considered, Brumley presents medical evidence that establishes each element[6] therein. Medical records show that Brumley suffered soft tissue damage in the form of a major tear in her right rotator cuff, (Tr. 230-45, 260-61, 281, 331-32, 335), that she underwent two surgeries aimed at repairing this tear, along with extensive physical therapy that seemed to be unsuccessful, (Tr. 334-36, 337, 340-41, 342-45, 368-91), and that major function has not been restored to her right arm for longer than 12 months post-injury. (Tr. 230-45, 246-47, 270-72, 292-95, 336, 337, 338, 342-45, 353-54).

---

[6] Listing 1.08 can be broken down into the following three relevant elements: (1) soft tissue injury of an upper extremity; (2) that is under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function; and (3) major function was not restored or expected to be restored within 12 months of onset. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Based on these findings, the Court is of the opinion that the error was, in fact, prejudicial to the outcome of Brumley's disability determination, and must be remanded to the Commissioner for further consideration.

## Conclusion

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings in accordance with this opinion. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED.**

This 19th day of December, 2014.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**